IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JANICE MARIE OTIS,        )
                             )
v.                        )     No. 3:12-0073
                             )
CAROLYN W. COLVIN,       )
     Acting Commissioner of    )
     Social Security[1]         )

To: The Honorable John T. Nixon, Senior District Judge

## REPORT AND RECOMMENDATION

The plaintiff filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying the plaintiff's claim for Disability Insurance Benefits ("DIB"), as provided by the Social Security Act.

Upon review of the Administrative Record as a whole, the Court finds that the Commissioner's determination that the plaintiff is not disabled under the Act is supported by substantial evidence in the record as required by 42 U.S.C. § 405(g), and that the plaintiff's motion for judgment on the administrative record (Docket Entry No. 9) should be DENIED.

## I. INTRODUCTION

In May 2008, the plaintiff protectively filed an application for DIB, alleging a disability onset date of August 1, 2007, due to, *inter alia*, fibromyalgia, irritable bowel syndrome ("IBS"), gastroesophageal reflux disease ("GERD"), Sjogren's syndrome, poor vision, mouth sores, burns,

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for former Commissioner Michael J. Astrue as the defendant in this case.

hip pain, neck pain, headaches, fatigue, sleep disorder, forgetfulness, and irritability. (Tr. 23, 70, 127-33, 142, 147.) Her application was denied initially and upon reconsideration. (Tr. 69-78.) The plaintiff appeared and testified at a hearing before Administrative Law Judge Daniel Whitney ("ALJ") on June 3, 2010. (Tr. 36-64.) On June 25, 2010, the ALJ entered an unfavorable decision. (Tr. 23-31.) On November 17, 2011, the Appeals Council denied the plaintiff's request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner. (Tr. 1-6.)

## II. BACKGROUND

The plaintiff was born on July 24, 1952 (tr. 45), and she was 55 years old as of her alleged disability onset date. She graduated high school and has worked as a receptionist and crew chief at a fast-food restaurant. (Tr. 41, 44, 46, 157.)

### A. Chronological Background: Procedural Developments and Medical Records

#### 1. Medical Evidence

From approximately April 2005 until December 2008, the plaintiff presented to Dr. Michael Helton for treatment of a variety of maladies including, *inter alia*, sinusitis, allergic rhinitis, dizziness, ear pain, hyperlipidemia, dermatitis, rash, gastroenteritis, diarrhea, urinary tract infection, history of Lyme disease, neck pain and spasm, polyarthralgia/myalgias, sleep apnea, anxiety, and weakness. (Tr. 307-37, 584-88, 649.) Dr. Helton prescribed Zoloft and BuSpar for the plaintiff's anxiety. (Tr. 314, 317-18, 618.)

In August 2006, the plaintiff presented to Dr. Carolyn Parrish with right eye conjunctival dysplasia. (Tr. 229, 232-33.) Dr. Parrish surgically removed the lesion, which was positive for dysplasia. (Tr. 229, 231.) The plaintiff returned to Dr. Parrish in March 2008 and an exam "revealed some ocular surface drying with decreased tear production but was otherwise unremarkable." (Tr. 229-30.) Dr. Parrish recommended that she begin using Restasis eye drops for dry eyes. *Id.* The plaintiff continued to report problems with "itchy" and "sticky" eyes in 2008, and she told Dr. Parrish that she had difficulty driving at night. (Tr. 592-93.) In February 2009, Dr. Parrish noted that the plaintiff's vision and tear production were "much improved" and recommended that she continue her prescribed regimen. (Tr. 590.) The plaintiff returned to Dr. Parrish in August 2009 for a follow-up visit and reported that she was "doing well" with no recurrence of dysplasia but with decreased tear film. (Tr. 639.)

The plaintiff also sought treatment at the Murfreesboro Medical Clinic primarily under the care of Dr. Asim Razzaq, a rheumatologist, from approximately May 2006 until April 2010. (Tr. 390-557, 613-37, 640-62.) During this time, the plaintiff received treatment for, *inter alia*, anxiety, IBS, GERD, cervicalgia, hip pain, foot pain, fibromyalgia, sicca symptoms, questionable Sjogren's syndrome, hyperlipidemia, vertigo, and dizziness. *Id.* Dr. Razzaq treated the plaintiff with a number of different medications for fibromyalgia and sicca symptoms with negative serologies.[2] (Tr. 391-94, 421-37, 444-47, 453-93, 497-511, 614-32, 642-51, 655-62.) After she was suspected of having Sjogren's syndrome, a biopsy was taken in April 2009 of her lower lip minor salivary

---

[2] Fibromyalgia is "pain and stiffness in the muscles and joints that is either diffuse or has multiple trigger points." Dorland's Illustrated Medical Dictionary 697 (30th ed.) ("Dorland's"). Sicca symptoms include dry eyes and mouth without evidence of connective tissue disease. *Id.* at 1832.

gland, which revealed mild chronic inflammation but no evidence of Sjogren's syndrome.[3] (Tr. 511, 622, 624-25, 630-32.)

The plaintiff also complained of symptoms related to IBS. (Tr. 525-28.) A March 2007 biopsy revealed a hyperplastic polyp on her colon. (Tr. 518-21.) Following complaints of cervicalgia, an August 2007 cervical spine x-ray showed marked degenerative changes at C4-C5, C5-C6, and C6-C7 with mild narrowing of the right neural foramen at C2-C3. (Tr. 512.) After the plaintiff complained of hip pain, Dr. Razzaq also ordered a hip x-ray in August 2007, which returned normal. (Tr. 509-12.) During an examination on August 3, 2007, Dr. Razzaq found "no evidence of overt synovitis" and observed that the plaintiff "move[d] upper and lower extremity joints well," although she had tenderness along her femoral trochanters. (Tr. 510.) In September 2007, Dr. Razzaq diagnosed her with likely right trochanteric bursitis and administered a steroidal injection in the right hip. (Tr. 484.) In March 2008, he administered trigger point injections into both hips. (Tr. 456-58.)

Dr. Razzaq referred the plaintiff to Dr. William Jekot, an orthopedist, who examined the plaintiff on May 5, 2008. (Tr. 451, 453-55.) Dr. Jekot diagnosed her with tendonitis in her right hip, administered an injection of Depo-Medrol, Marcaine, and Lidocaine, and recommended physical therapy. (Tr. 451.) The plaintiff attended physical therapy from May to July 2008 (tr. 260-304), at the conclusion of which she reported "no improvement in symptoms" and "no significant change in functional abilities." (Tr. 260.) The physical therapist observed that the plaintiff had "responded well to therapy" but had "not met treatment goals." *Id.* Upon discharge, the plaintiff demonstrated

---

[3] Sjogren's syndrome is "a symptom complex of unknown etiology, usually occurring in middle-aged or older women" that includes dry eyes and mouth with the presence of a connective tissue disease. Dorland's at 1832.

normal range of motion in her cervical and lumbar spine as well as normal range of motion and strength in her upper and lower extremities. *Id.* Her general flexibility was mildly decreased, and she had mild tenderness in her shoulder girdle and cervical region as well as moderate tenderness in her periscapular region. *Id.* The plaintiff returned to Dr. Jekot in June 2008, reporting that her hip pain was "much improved" after the steroid injection and physical therapy and that the pain was "more of a nuisance" and did not "disturb her sleep or limit her activity." (Tr. 448.) On examination, she had "very slight tenderness" and good range of motion, strength, and stability with a positive Ober's test. *Id.* Dr. Razzaq noted in August and October 2008 that physical therapy had improved the plaintiff's right hip bursitis/tendonitis. (Tr. 432, 437.)

In December 2008, the plaintiff complained of vertigo and dizziness. (Tr. 411.) Objective testing was negative, and she was treated for mild Meniere's disease and prescribed Dyazide.[4] (Tr. 400-01.) At a follow-up visit in February 2009, she was doing well, although she complained of "some occasional mild high pitched tinnitus," and was taken off of Dyazide. (Tr. 630, 633.)

### 2. Opinion Evidence

On June 25, 2008, Dr. Rebecca Joslin, Ed.D., a nonexamining Tennessee Disability Determination Services ("DDS") psychological consultant, completed a Psychiatric Review Technique ("PRT"), opining that the plaintiff's anxiety disorder caused mild restrictions of the activities of daily living and mild difficulties in maintaining concentration, persistence, or pace.

---

[4] Meniere's disease is an inner ear disorder characterized by hearing loss, tinnitus, and vertigo. Dorland's at 538.

(Tr. 234-47.)  On September 2, 2008, Dr. Brad Williams, a nonexamining DDS psychological consultant, completed a PRT with identical conclusions.  (Tr. 338-65.)

On July 2, 2008, Dr. Lina Caldwell, a nonexamining DDS consultative physician, completed a physical Residual Functional Capacity ("RFC") assessment.  (Tr. 248-55.)  Dr.  Caldwell opined that the plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk two hours in an eight-hour workday, sit about six hours in an eight-hour workday, and push and/or pull in unlimited capacities.  (Tr. 249.)  Dr. Caldwell also opined that the plaintiff could frequently balance, stoop, kneel, and crawl; occasionally crouch and climb ramps and stairs; and never climb ladders, rope, or scaffolds.  (Tr. 250.)

On July 8, 2008, Dr. Nathaniel Robinson, a nonexamiming DDS consultative physician, evaluated the plaintiff's visual impairment and opined that it was not severe.  (Tr. 256-59.)

On September 10, 2008, Dr. Joe Allison, a nonexamining DDS consultative physician, completed a physical RFC assessment.  (Tr. 366-73.)  Dr. Allison opined that the plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk about six hours in an eight-hour workday, sit about six hours in an eight-hour workday, and push and/or pull in unlimited amounts.  (Tr. 367.)  He opined that the plaintiff could occasionally climb ladders, ropes, or scaffolds and frequently climb ramps and stairs as well as balance, stoop, kneel, crouch, and crawl.  (Tr. 368.)

On February 10, 2010, Dr. Woodrow Wilson, a DDS consultative physician, physically examined the plaintiff.  (Tr. 558-61.)  The plaintiff reported having a history of fibromyalgia, IBS, GERD, hypertension, high cholesterol, and eye problems including dry eyes and blurred vision.  (Tr. 558.)  Upon examination, Dr. Wilson observed that the plaintiff had full range of motion in her

neck, elbows, wrists, hands, hips, knees, ankles, and shoulders except for external rotation to 40 degrees bilaterally. (Tr. 560.) She could tandem walk "six steps without too much difficulty," balance her weight on each foot, and get out of a chair without difficulty. (Tr. 559-60.) She had a normal gait and a negative straight leg raise bilaterally. (Tr. 560.) Her motor strength was 5/5, and she had intact sensation and 2+ deep tendon reflexes bilaterally in her upper and lower extremities. *Id.*

Dr. Wilson diagnosed the plaintiff with obesity as well as a history of fibromyalgia, IBS, GERD controlled on medication, dry eyes, hypertension, hypercholesterolemia, and sleep apnea. *Id.* Dr. Wilson completed a Medical Source Statement assessing the plaintiff's ability to perform work-related activities (tr. 562-67) and opined that, due to fibromyalgia, the plaintiff could continuously lift up to 10 pounds, frequently lift 11 to 20 pounds, and never lift 21 pounds or more and that she could frequently carry up to 10 pounds and never carry 11 pounds or more. (Tr. 562.) Dr. Wilson also opined that, in an eight-hour workday, the plaintiff could sit one hour at a time for four hours total, stand ten minutes at a time for two hours total, and walk three minutes at a time for three hours total. (Tr. 563.) He opined that, due to bilateral shoulder pain and fibromyalgia, the plaintiff could frequently reach overhead with either hand and continuously reach all other directions, handle, finger, feel, push, and pull. (Tr. 563-64.) He opined that she could continuously operate foot controls, frequently balance, and occasionally climb, stoop, kneel, crouch, and crawl. (Tr. 564.) Finally, Dr. Wilson opined that the plaintiff should never be exposed to unprotected heights but could continuously be exposed to moving mechanical parts and extreme heat and frequently be exposed to humidity, wetness, operating a motor vehicle, extreme cold, vibrations, dust, odors, fumes, and pulmonary irritants. (Tr. 565.)

On February 13, 2010, Dr. LaShonda Hughes, Psy.D., a DDS consultative psychologist, completed a psychological evaluation of the plaintiff. (Tr. 568-74.) The plaintiff reported that she had "difficulty staying in a deep sleep because of her sleep apnea," "that her predominant mood is cranky," and that she had "'anxiety attacks' . . . about 4-8 times per month." (Tr. 569.) She said that her anxiety attacks were "not as severe because [her] medication ha[d] [the attacks] fairly under control." *Id.* She described the anxiety attacks as "getting a 'pins and needly feeling,' lightheaded, and sweaty." *Id.* The plaintiff reported that she was able to manage her medications and finances "with little or no difficulty." (Tr. 571.) She said that she "can prepare elaborate meals" and "can wash dishes, vacuum, sweep and do laundry." *Id.*

Dr. Hughes found no evidence of impairment in the plaintiff's long term or remote memory functioning, observed that she was able to follow written and spoken directions, and opined that she fell within the average range of intellectual functioning. (Tr. 570.) Dr. Hughes diagnosed the plaintiff with "[a]nxiety [d]isorder NOS (mixed anxiety-depressive disorder controlled with medication)" and assigned her a GAF score of 55.[5] (Tr. 571.) She opined that the plaintiff showed no evidence of impairment in her ability to relate socially or adapt to change but that she showed evidence of mild impairment in her short-term memory. *Id.* Dr. Hughes completed a Medical Source Statement opining that the plaintiff had no limitations performing work-related mental activities. (Tr. 572-74.)

---

[5] The GAF scale is used to assess the social, occupational, and psychological functioning of adults. Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) ("DSM–IV–TR"). A GAF score between 51-60 falls within the range of "[m]oderate symptoms [or] moderate difficulty in social, occupational, or school functioning." *Id.*

**B. Hearing Testimony**

At the hearing held on June 3, 2010, the plaintiff was represented by counsel, and the plaintiff and the vocational expert ("VE"), Dr. Kenneth Anchor, testified. (Tr. 36-64.) The plaintiff testified that she graduated high school and lives with her husband. (Tr. 45-46.) She testified that she has worked as a receptionist for both an eye doctor and a chiropractor. (Tr. 41.) She explained that, in these jobs, she answered the phone, scheduled appointments, billed insurance, checked patients in and out, developed x-rays, and performed visual field testing, physical therapy, and ultrasound therapy on patients. *Id.* She testified that she last worked as a "crew chief" at McDonald's in 2005 but that she quit working because her husband got pneumonia and she stayed home with him. (Tr. 44.)

The plaintiff testified that she is unable to work due to "[s]evere fatigue," fibromyalgia, IBS, dry eyes and mouth, and sleep apnea. (Tr. 47.) She said that she has pain "[a]ll over," which she described as "a burning, gnawing pain throughout [her] whole body." (Tr. 47-48.) She said that "[a]ny exertion, any stress . . . makes [the pain] so much worse." (Tr. 48.) She also testified that she has "anxiety attacks" approximately once a week, although she said that medicine "helps to control them." (Tr. 57.) She also said that she has dry eyes and uses artificial tears. (Tr. 48-49.)

The plaintiff testified that she has problems balancing and cannot "stand for any length of time." (Tr. 53.) She said that she can stand or walk for approximately ten minutes before needing to sit down but that sitting makes the "burning and the pain in [her] upper back . . . worse." (Tr. 53-54.) She estimated that she can sit for a "couple hours" before needing to change positions and said that she can lift a gallon of milk "with a lot of difficulty." (Tr. 54, 56.) She explained that she cannot kneel and "can barely pick things up off the floor." (Tr. 54.) She reported that she can dress

and bathe herself but that she wears slip-on shoes because she cannot tie her shoelaces. (Tr. 54-55.) She said that her fingers "get real stiff" but that she can perform fine motor skills such as picking up a pen, tying a string, or fastening a button. (Tr. 55.) She testified that she has a driver's license but is unable to drive at night and only drives "locally because of dizziness." (Tr. 56.) She also testified that her medications make her "groggy" and "tired." (Tr. 52.)

The VE testified that his testimony was consistent with the Dictionary of Occupational Titles ("DOT") and classified the plaintiff's past work as a fast-food crew chief as light and semi-skilled and her past work as a receptionist as sedentary and semi-skilled.[6] (Tr. 40-42.) The ALJ asked whether a hypothetical person with the plaintiff's education and work history would be able to obtain work if she could sit for six hours in an eight-hour workday, stand and walk for six hours in an eight-hour workday, lift and carry twenty pounds occasionally and ten pounds frequently, climb frequently except that she could climb ladders, ropes, and scaffolds occasionally, and frequently balance, stoop, kneel, crouch, and crawl. (Tr. 58.) The VE replied that such a person would be able to perform the plaintiff's past relevant work. *Id.*

Next, the ALJ asked whether a person with these limitations would be able to obtain work if she were also only able to understand, remember, and carry out short and simple, detailed instructions and make judgments on simple and detailed work-related decisions. (Tr. 59.) The VE replied that a person with these limitations could perform the plaintiff's past relevant work and could also work as a cashier, office helper, and mail clerk. *Id.*

---

[6] The VE initially testified that the receptionist job was unskilled but later explained that, due to the broader responsibilities that the plaintiff actually performed, the receptionist job was similar to an "office clerk" job and involved semi-skilled work. (Tr. 41-42, 59.)

Finally, the ALJ asked whether a hypothetical person would be able to obtain work if she were limited to sitting four hours, standing two hours, and walking three hours in an eight-hour workday; could lift and carry twenty pounds occasionally and ten pounds frequently; could continuously push and pull; could occasionally climb, stoop, kneel, crouch, and crawl; could frequently balance and reach overhead; could continuously handle, finger, and feel; could frequently be exposed to cold, wetness, humidity, vibrations, fumes, odors, gases, and poor ventilation; could continuously be exposed to heat and noise; and could never be exposed to unprotected heights. (Tr. 59-60.) Additionally, the person would need to be able to sit and stand at will, could continuously operate foot controls, and could frequently drive due to dry eyes. (Tr. 60.) The VE replied that a person with these limitations could not work as a fast-food crew chief but could perform the plaintiff's past relevant work as a receptionist/office clerk or in representative jobs as a cashier, office helper, and mail clerk. *Id.* The VE testified that these jobs would remain available if the hypothetical person were also only able to understand, remember, and carry out short and simple, detailed instructions and make judgments on simple and detailed work-related issues. *Id.*

In response to questioning by the plaintiff's attorney, the VE testified that, if the person in the above hypothetical were only able to sit one hour, stand ten minutes, and walk three minutes at a time, then she would not be able to perform the jobs of fast-food crew chief, mail clerk, and office helper but could perform the jobs of receptionist/office clerk and cashier. (Tr. 61-62.) The VE testified that, if the hypothetical person were further restricted to occasional handling, fingering, feeling, and fine motor movements with the upper extremities, she would not be able to perform the cashier job and would find the receptionist/office clerk jobs reduced by 50-60%. (Tr. 62.) Finally,

the VE testified that, if a person needed to miss more than two days of work per month, it would rule out all possible jobs.  (Tr. 63.)

## III. THE ALJ'S FINDINGS

The ALJ issued an unfavorable ruling on June 25, 2010.  (Tr. 23-31.)  Based upon the record, the ALJ made the following findings:

1. The claimant last met the insured status requirements of the Social Security Act on September 30, 2008.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of August 1, 2007 through her date last insured of September 30, 2008 (20 CFR 404.1571 *et seq*.).

3. Through the date last insured, the claimant had the following severe impairments: sicca symptoms, fibromyalgia, and anxiety (20 CFR 404.1520(c)).

   ***

   Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

   ***

4. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to lift and/or carry 20 pounds and 10 pounds frequently; sit for 4 hours in an 8-hour work day; stand for 2 hours in an 8-hour work day; walk for 3 hours in an 8-hour work day; continuous pushing, pulling, handling, fingering, and feeling; occasionally climb, kneel, crouch, and crawl; frequent reaching and balancing; frequent exposure to cold, wetness, humidity, vibrations, fumes, odors, gases, and poor ventilation; avoid all unprotected heights; able to understand, remember, and carry out short and simple, detailed instructions; and to make judgments on simple and detailed work-related decisions.

   ***

5.    Through the date last insured, the claimant was capable of performing past relevant work as a receptionist.  This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

\*\*\*

6.    The claimant was not under a disability, as defined in the Social Security Act, at any time from August 1, 2007, the alleged onset date, through September 30, 2008, the date last insured (20 CFR 404.1520(g)).

(Tr. 25-31.)

# IV. DISCUSSION

## A. Standard of Review

The determination of disability under the Act is an administrative decision, and the only questions before this Court are whether the decision of the Commissioner is supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching her conclusion.  42 U.S.C. § 405(g).  *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (adopting and defining substantial evidence standard in context of Social Security cases); *Kyle v. Comm'r Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010).  The Commissioner's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakely v. Comm'r of Soc. Sec.,* 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 389-90 (6th Cir. 1999).  Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229,

59 S. Ct. 206, 83 L. Ed. 126 (1938)); *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007); *Le Master v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially similar to that in *Richardson*).

A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See, e.g., Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial evidence to support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g., Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

The Commissioner must employ a five-step evaluation process in determining the issue of disability. *See, e.g., Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (citing *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)). The original burden of establishing disability is on the plaintiff, and impairments must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. § 1382c(a)(3)(D); 20 C.F.R. §§ 404.1512(a), (c), 404.1513(d). First, the plaintiff must show that she is not engaged in "substantial gainful activity" at the time she seeks disability benefits. *Id.* (citing 20 C.F.R. §§ 404.1520(b), 416.920(b)); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). A plaintiff who is performing substantial gainful activity is not disabled no matter how severe the plaintiff's medical condition may be. *See, e.g., Dinkel v. Sec'y of Health & Human Servs.*, 910 F.2d 315, 318 (6th Cir. 1990).

Second, the plaintiff must show that she suffers from a severe impairment that meets the twelve month durational requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Edwards v. Comm'r of Soc. Sec.*, 113 Fed. Appx. 83, 85 (6th Cir. 2004). A "severe impairment" is

one which "significantly limits . . . physical or mental ability to do basic work activities." *Barnhart v. Thomas*, 540 U.S. 20, 24, 124 S. Ct. 376, 157 L. Ed.2d 333 (2003) (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). Basic work activities are "the abilities and aptitudes necessary to do most jobs," such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; [c]apacities for seeing, hearing, and speaking; [u]nderstanding, carrying out, and remembering simple instructions; [u]se of judgment; [r]esponding appropriately to supervision, co-workers and usual work situations; and [d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b). The Commissioner is required to consider the combined effects of impairments that individually are not severe but cumulatively may constitute a severe impairment. 42 U.S.C. § 423(d)(2)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988).

Third, if the plaintiff is not engaging in substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, the plaintiff is presumed disabled without further inquiry, regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d)). The plaintiff may establish that she meets or equals a listed impairment and that the impairment has lasted or is expected to last for at least twelve months or result in death. *See Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 350 (6th Cir. 1988). The plaintiff is not required to show the existence of a listed impairment in order to be found disabled, but such a showing results in an automatic finding of disability. *See Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, she is not disabled. *Id.* The plaintiff has the burden of proving inability to perform past relevant

15

work or proving that a particular past job should not be considered relevant. *Cruse*, 502 F.3d at 539; *Jones*, 336 F.3d at 474 ("Through step four, the [plaintiff] bears the burden of proving the existence and severity of limitations caused by [her] impairments and the fact that [she] is precluded from performing [her] past relevant work"); *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 109 (6th Cir. 1989). If the plaintiff fails to carry this burden, she must be denied disability benefits.

Once the plaintiff establishes a *prima facie* case that she is unable to perform her prior relevant employment, the burden of production shifts in step five to the Commissioner to show that the plaintiff can perform other substantial gainful employment and that such employment exists in significant numbers in the national economy. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997)). *See also Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). To rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs a plaintiff can perform. *Longworth*, 402 F.3d at 595. *See also Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S. Ct. 2428, 77 L. Ed. 2d 1315 (1983) (upholding the validity of the medical-vocational guidelines grid as a means for the Commissioner of carrying his burden under appropriate circumstances). It remains the plaintiff's burden to prove the extent of her functional limitations. *Her*, 203 F.3d at 391. Even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in significant numbers in the national economy that the plaintiff can perform, she is not disabled. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). *See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the sequential evaluation process, the claim is not reviewed further. 20 C.F.R. § 404.1520(a)(4). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of a plaintiff's claim at step two of the evaluative process is appropriate in some circumstances).

## B. The Five-Step Inquiry

In this case, the ALJ resolved the plaintiff's claim at step four of the five-step process. At step one, the ALJ found that the plaintiff had not engaged in substantial gainful activity from the date of her alleged disability onset through her date last insured. (Tr. 25.) At step two, the ALJ determined that the plaintiff had the following severe impairments: "sicca symptoms, fibromyalgia, and anxiety." *Id.* At step three, the ALJ found that the plaintiff's impairments, either singly or in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.[7] (Tr. 26.) At step four, the ALJ determined that the plaintiff was capable of performing her past relevant work as a receptionist. (Tr. 30.) Consequently, the ALJ determined that the plaintiff was not disabled between her alleged onset date and her date last insured. (Tr. 31.)

## C. The Plaintiff's Assertions of Error

The plaintiff argues that the Appeals Council "failed to give full and appropriate consideration to the opinions of two treating sources" and "failed to include" these opinions in the

---

[7] The plaintiff erroneously contends that the ALJ did not make a step-three finding. Docket Entry No. 9-1, at 6. The ALJ's step-three finding is set out in the record at pages 26 and 27.

record. Docket Entry No. 9-1, at 7-9. The plaintiff also argues that the ALJ failed to properly evaluate her credibility. *Id.* at 9-11.

### 1. The Court cannot consider the evidence submitted to the Appeals Council after the ALJ's decision.

The plaintiff submitted additional evidence to the Appeals Council after the ALJ's June 25, 2010 decision. Docket Entry No. 9-1, at 7-9; (tr. 2). The additional evidence includes: (1) a letter submitted by Dr. Aldrich Perry, D.D.S.; (2) a letter submitted by Dr. Carolyn Parrish; and (3) mental and physical assessments completed by Dr. Michael Helton. (Tr. 2.) The Appeals Council considered the additional evidence but declined to review the ALJ's decision. (Tr. 1-6.) None of the additional evidence is included in the record before the Court.

When the Appeals Council considers new evidence but declines to review a plaintiff's application for benefits on the merits, the Court "cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision." *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996) (citing *Cotton v. Sullivan*, 2 F.3d 692, 695-96 (6th Cir. 1993)). Because the Court cannot consider the new evidence in its substantial evidence review, it was not necessary for the evidence to be included in the record before the Court.

The Court can remand a case under sentence six of 42 U.S.C. § 405(g) for the Commissioner to consider the additional evidence only if the plaintiff shows that the evidence is "new" and "material," and she provides "good cause" for failing to include the evidence in the record prior to the ALJ's decision. 42 U.S.C. § 405(g). *See also Templeton v. Comm'r of Soc. Sec.*, 215 Fed. Appx. 458, 463-64 (6th Cir. Feb. 8, 2007) (citing *Foster v. Halter,* 279 F.3d 348, 357 (6th Cir. 2001));

*Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 490-91 (6th Cir. 2006); *Cline*, 96 F.3d at 148 (citing *Cotton*, 2 F.3d at 695-96); *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). However, the plaintiff did not request a sentence six remand or otherwise demonstrate that she is entitled to such relief. Consequently, the Court's review is limited to the evidence presented to the ALJ.

### 2. The ALJ properly evaluated the plaintiff's credibility.

The plaintiff argues that the ALJ erred in evaluating her credibility. Docket Entry No. 9-1, at 9-11. The defendant argues that the ALJ's credibility finding is supported by substantial evidence. Docket Entry No. 11, at 10-11.[8]

An ALJ is charged with evaluating the credibility of the plaintiff at the hearing, and the ultimate decision of credibility rests with the ALJ. The ALJ's credibility finding is entitled to deference "because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *See Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (internal citations omitted). However, "[i]f the ALJ rejects the claimant's complaints as incredible, he must clearly state his reason for doing so." *Wines v. Comm'r of Soc. Sec.*, 268 F. Supp. 2d 954, 958 (N.D. Ohio 2003) (citing *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994)).

---

[8] The defendant's memorandum contains a number of pages that appear to pertain to a different case, including a second discussion of the ALJ's credibility finding, with citations to the plaintiff's brief and the record that are clearly inapplicable. Docket Entry No. 11, at 11-13. The plaintiff, in her reply, felt obliged to respond to the defendant's arguments on matters that did not relate to this case. Docket Entry No. 12, at 5-6. The Court has considered only the arguments relevant to this case.

Social Security Ruling 96-7p emphasizes that credibility determinations must find support in the record, and not be based upon the "intangible or intuitive notion[s]" of the ALJ. 1996 WL 374186, at *4. In assessing the plaintiff's credibility, the ALJ must consider the record as a whole, including the plaintiff's complaints, lab findings, information provided by treating physicians, and other relevant evidence. *Id.* at *5. Consistency between the plaintiff's subjective complaints and the record evidence "tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect." *Kalmbach v. Comm'r of Soc. Sec.,* 2011 WL 63602, at *11 (6th Cir. Jan. 7, 2011). The ALJ must explain his credibility determination such that both the plaintiff and subsequent reviewers will know the weight given to the plaintiff's statements and the reason for that weight. Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4.

Both the SSA and the Sixth Circuit have enunciated guidelines for use in analyzing a plaintiff's subjective complaints of pain. *See* 20 C.F.R. § 404.1529; *Felisky*, 35 F.3d at 1037. While the inquiry into subjective complaints of pain must begin with the objective medical record, it does not end there. The Sixth Circuit, in *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847 (6th Cir. 1986), set forth the basic standard for evaluating such claims.[9] The *Duncan* test has two prongs. The first prong is whether there is objective medical evidence of an underlying medical condition. *Felisky*, 35 F.3d at 1039 (quoting *Duncan*, 801 F.2d at 853). The second prong has two parts: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain." *Id.* This test does not require

---

[9] Although *Duncan* only applied to determinations made prior to 1987, the Sixth Circuit has since held that *Duncan* continues to apply to determinations made after 1987. *See Felisky*, 35 F.3d at 1039 n.2.

objective evidence of the pain itself. *Duncan*, 801 F.2d at 853 (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071 (3rd Cir. 1984)).

The ALJ satisfied the first prong of the *Duncan* test when he concluded that the plaintiff's medically determinable impairments could reasonably be expected to cause some of her alleged symptoms. (Tr. 29.) Given that the second prong of the *Duncan* test consists of two alternatives, the plaintiff must only meet one of the following two elements: the objective medical evidence "confirms the severity of the alleged pain arising from the condition" or the "objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain." The SSA provides a checklist of factors to assess symptoms, including pain, in 20 C.F.R. § 404.1529(c). The ALJ cannot ignore a plaintiff's statements detailing the symptoms, persistence, or intensity of her pain simply because current objective medical evidence does not fully corroborate the plaintiff's statements. 20 C.F.R. § 404.1529(c)(2). Besides reviewing medical records to address the credibility of a plaintiff's symptoms of pain, an ALJ must review the entire case record in light of the seven factors set forth in 20 C.F.R. § 404.1529(c)(3).[10]

After discussing the evidence of record in significant detail, the ALJ found as follows:

> The medical records showed the claimant has sicca symptoms and fibromyalgia. The medical evidence indicated that the claimant uses Restasis due to her dry eyes. However, the claimant has only mild chronic inflammation with no evidence of Sjogren's syndrome. In addition, the medical evidence revealed the claimant

---

[10] The seven factors include: (i) the plaintiff's daily activities; (ii) the location, duration, frequency, and intensity of the plaintiff's pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness and side effects of any medication the plaintiff takes or has taken to alleviate pain or other symptoms; (v) treatment, other than medication, plaintiff received or has received for relief of pain or other symptoms; (vi) any measures plaintiff uses or has used to relieve pain or other symptoms (e.g. lying flat on her back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) other factors concerning the plaintiff's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3).

experienced some pain in her hips. However, the medical records showed the claimant has no active inflammatory joint condition. Also, Dr. Jekot noted that the claimant moves her upper and lower extremities well. Furthermore, the claimant reported that her condition improved since she has been taking the medication Savella. Also, none of the claimant's treating physicians noted that the claimant is not able to perform any form of work activity. The claimant also stated that she dresses, bathes, grooms, and feeds herself. The claimant pointed out that she can perform household chores such as washing dishes, vacuuming, dusting, cleaning bathrooms, and sweeping. Accordingly, the claimant's allegation regarding the severity of her sicca symptoms and fibromyalgia are partially credible.

Also, the claimant has been diagnosed with having anxiety disorder. Medical records showed the claimant's anxiety disorder is controlled with medication. In addition, the claimant stated that she is able to manage her medications and finances with little or no difficulty. The claimant's intellectual functioning is within the average range. The claimant indicated that she is able to follow written instructions well, but she is not able to follow spoken instructions that well. The claimant testified that when she has an anxiety attack, it causes problems with her concentration. However, the claimant testified that she only has an anxiety attack about once a week. Therefore, the claimant's allegation regarding the severity of her anxiety disorder is partially credible.

(Tr. 30.)

As demonstrated above, the ALJ set forth a detailed analysis evaluating several of the factors in 20 C.F.R. § 405.1529(c)(3) and concluding that the plaintiff's subjective complaints of pain are not disabling. (Tr. 15-16.) The plaintiff contends that the ALJ's credibility finding is "conclusory" (Docket Entry No. 9-1, at 10); however, that is clearly not the case. The ALJ addressed, *inter alia*, the plaintiff's daily activities; the location, duration, frequency, and intensity of her symptoms; the effectiveness of medication; and the medical treatment that she received. *Id.* The ALJ's assessment is supported by substantial evidence and complies with *Duncan*, Social Security Ruling 96-7p, and 20 C.F.R. § 404.1529.

## V. RECOMMENDATION

For the above stated reasons it is recommended that the plaintiff's motion for judgment on the administrative record (Docket Entry No. 9) be DENIED and the Commissioner's decision be AFFIRMED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation, and must state with particularity the specific portions of this Report and Recommendation to which the objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully Submitted,

JULIET GRIFFIN
United States Magistrate Judge